IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DONALD DALE PENCE,

Petitioner,

v.

CAROL HOLINKA, Warden,

Respondent.

OPINION and ORDER

09-cv-489-slc[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Under the Second Chance Act of 2007, 18 U.S.C. § 3624(c), the Federal Bureau of Prisons is authorized to place prisoners in a residential re-entry center, or halfway house, for up to 12 months before the end of the prisoner's term of imprisonment. In this petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, petitioner Donald Dale Pence contends that the bureau is violating § 3624(c) by refusing to transfer him to a halfway house until the last six months of his sentence. In an order dated August 14, 2009, I concluded that a petition under § 2241 is the proper way to bring this challenge because success on the claim would mean that petitioner is entitled to "a quantum change in [his]

[1] Because consents to the magistrate judge's jurisdiction have not yet been filed by all the parties to this action, I am assuming jurisdiction over the case for the purpose of this order.

level of custody" at a particular time. Graham v. Broglin, 922 F.2d 379, 381 (7th Cir.1991); see also Glaus v. Anderson, 408 F.3d 382, 387-88 (7th Cir. 2005) ("Graham outlines a clear distinction: a petitioner requests either a "quantum change in the level of custody," which must be addressed by habeas corpus, or "a different program or location or environment," which raises a civil rights claim). I directed respondent to show cause why the petition should not be granted.

Under 18 U.S.C. § 3624(c)(1),

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

The language of the statute makes it clear that prisoners are not guaranteed 12 months at a halfway house. Rather, the bureau is required, when "practicable," to allow a prisoner to spend "a portion" of the last months of his term under conditions that will prepare him for reentry. Sessel v. Outlaw, 2009 WL 1850331, *4 (E.D. Ark. 2009) ("These are matters left to the discretion of the BOP."); Daraio v. Lappin, 2009 WL 303995 (D. Conn. Feb. 9, 2009) (bureau "retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at" halfway house).

This does not mean that the bureau has absolute authority to deny a prisoner transfer to a halfway house. Under § 3624(c)(6), the bureau must "ensure that placement in a

community correctional facility . . . is . . . of sufficient duration to provide the greatest likelihood of successful reintegration into the community." In addition, decisions about placement in a halfway house must be made "on an individual basis" and take into account the factors listed in 18 U.S.C. § 3621(b). 18 U.S.C. § 3524(c)(6)(A)-(B). See also Sessel, 2009 WL 1850331, at *4; Daraio, 2009 WL 303995; 28 C.F.R. § 570.22 ("Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.")

The factors listed in § 3621(b) include:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner; and
> (4) any statement by the court that imposed the sentence—
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission . . .

In response to the order to show cause, respondent submits a declaration from petitioner's case manager (who made the decision to give petitioner six months in a halfway house). The declaration shows individualized consideration of each of the five factors.

Petitioner makes much of the fact that, in considering the fourth factor, the case

manager found that, aside from petitioner's sentence and supervised release period, "no judicial recommendations were made; however, a request was made that he participate in the Residential Drug Abuse Program." Petitioner points out that his criminal judgment states that the court made "recommendations" for "intensive substance abuse treatment" and "a medical evaluation and possible medication to address injuries he sustained in the past." In other words, petitioner contends that the fourth factor was improperly considered because he *did* have other judicial recommendations, one of which related to his concerns about his brain injury. Moreover, petitioner alleges that he has not received "any" medical treatment for his brain injury while incarcerated and was told he would get treatment upon release into the halfway house.

What petitioner misunderstands is that the case manager's mention of "recommendations" was a reference to recommendations related to how petitioner should serve his sentence (length of sentence, period of supervised release, any halfway house). There is no reason to think that the court's recommendation for "medical evaluation and medication" has anything to do with whether petitioner should be in a halfway house, rather than with his treatment *during* his imprisonment. At any rate, the case manager did consider petitioner's brain injury, in the context of the third factor, noting that petitioner suffers from anxiety and mood disorders caused by his head injury.

Petitioner's other challenges to the individualized assessment are even less persuasive.

He contends that the case manager erred by relying on the fact that he has a "pending parole violation for absconding in 2005," when assessing the third factor. However, petitioner does not argue that he did not abscond, only that an "order of warrant revocation" was signed. Other points petitioner makes include his beliefs that a longer time to readjust in the halfway house would help him better reintegrate in light of his brain injuries, that he has done "many good things" since he was incarcerated, that he intends to take a class in his release community that starts a month before his release date and that he doubts that halfway house "bed space is at a premium" as the case manager found because he has "not heard of any troubles." None of these points will save petitioner from the case manager's decision.

It may be that petitioner disagrees with the decision and has his reasons. It may even be that, on a clean slate, a decision maker looking at petitioner's circumstances would have given petitioner more than six months. But this is not a clean slate; this court's role is not to review the factors independently and decide what is best for petitioner. In other words, the case manager's decision, adopted by the Bureau of Prisons, is entitled to deference. Because I cannot say the case manager's decision was arbitrary or otherwise failed to follow the requirements of the statute, I will deny the petition for a writ of habeas corpus.

ORDER

IT IS ORDERED that petitioner Donald Dale Pence's petition for a writ of habeas

corpus is DENIED for his failure to show that he is in custody in violation of the Constitution or the laws of the United States and this case is DISMISSED.

Entered this 28th day of September, 2009.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge